IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| GAC ENTERPRISES, LLC,<br><br>    Plaintiff,<br><br>vs.<br><br>PLANET FIBER VA INC.,<br><br>    Defendant. | CIVIL ACTION FILE NO. 3:25-cv-00265<br><br>**DEFENDANT PLANET FIBER VA INC.'S ANSWER AND COUNTERCLAIM**<br><br>**JURY TRIAL DEMANDED** |

## DEFENDANT PLANET FIBER VA INC.'S ANSWER AND COUNTERCLAIM

## ANSWER

Pursuant to Rule 12(a) of the Federal Rules of Civil Procedure Defendant Planet Fiber VA Inc. ("Planet"), by and through its undersigned counsel, responds as follows to the Complaint in the above-captioned action. Planet bases its responses to the allegations in the Complaint on actual knowledge of its own actions, and on information and belief with respect to all other matters. The numbered paragraphs herein correspond to the numbered paragraphs in the Complaint. Unless expressly admitted, all allegations in the Complaint are denied.

## PARTIES

1.  Plaintiff GAC Enterprises, LLC ("GAC") is a single-member LLC with its only member resident in and a citizen of Houston, Texas, and its principal place of business in North Carolina.

**ANSWER:** Planet lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and, therefore, denies same.

2.    Defendant Planet Fiber VA Inc. is a Virginia stock corporation with its principal address at 717 East 3rd Street in Farmville, VA ("Planet"). Its fictitious names have included "Kinex Telecom" and "Planet Networks."

**ANSWER:**    Planet admits that it "is a Virginia stock corporation with its principal address at 717 East 3rd Street in Farmville, VA." Planet admits that it was previously known as "Kinex Telecom." Planet denies the remaining allegations in this paragraph.

3.    On November 27, 2024, the name of Planet changed from Kinex Telecom, Inc. to Planet Fiber VA, Inc., apparently as a result of an acquisition of Kinex Telecom, Inc.

**ANSWER:**    Planet admits that on November 27, 2024, the name of Planet changed from Kinex Telecom, Inc. to Planet Fiber VA Inc., as a result of an acquisition of Kinex Telecom, Inc.

## JURISDICTION AND VENUE

4.    This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332 as it is a civil case to recover damages in excess of seventy-five thousand dollars ($75,000), and there is complete diversity as GAC is a citizen of Texas, and Planet is a citizen of Virginia.

**ANSWER:**    This paragraph states a legal argument or conclusion for which no answer is required. To the extent a response is required, Planet admits that Plaintiff purports to assert a claim pursuant to 28 U.S.C. § 1332.

5.    This Court has personal jurisdiction over Planet as this cause of action arises from Planet's transaction of business and the provision of services for a construction project in Farmville, Virginia.

**ANSWER:**    This paragraph states a legal argument or conclusion for which no answer is required. To the extent a response is required, Planet admits that it conducts business in the Eastern District of Virginia. Planet denies the remaining allegations in this paragraph.

6.    This Court is the proper venue for this case because the transaction at issue arises out of services performed in Farmville, Virginia.

**ANSWER:**    This paragraph states a legal argument or conclusion for which no answer is required.  To the extent a response is required, Planet admits that it conducts business in the Eastern District of Virginia.  Planet denies the remaining allegations in this paragraph.

<u>**FACTS**</u>

7.    GAC has been in business since 2006, initially under the name GAC Construction LLC and since 2016 under its current name.  GAC has engaged in many aspects of the drilling business, including for utilities and pipelines, but has focused in particular on installing fiber optic lines for broadband internet service.

**ANSWER:**    Planet lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and, therefore, denies same.

8.    GAC has developed substantial experience and expertise over the years in installing fiber optic lines.

**ANSWER:**    Planet lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and, therefore, denies same.

9.    In or around 2022, GAC was first approached by James Garrett, then-principal of the Defendant Planet, then known as "Kinex Telecom, Inc."

**ANSWER:**    Planet lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and, therefore, denies same.

10.    Mr. Garrett saw GAC's work crew installing lines and contracted with GAC to perform services in relation to the installation of fiber optic lines in the Farmville, Virginia area to facilitate broadband internet service.

**ANSWER:**    Planet lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and, therefore, denies same.

11.    The fiber installation was part of a project funded by the U.S. government administered by the Commonwealth of Virginia through the Virginia Telecommunication Initiative and Virginia Department of Housing and Community Development, to provide broadband coverage to rural and underserved communities.

**ANSWER:**    Planet admits that it has installed fiber in the Farmville, Virginia area as part of projects funded by the U.S. government and administered by the Commonwealth of Virginia through the Virginia Telecommunication Initiative and the Rural Digital Opportunity Fund, to provide broadband coverage to rural and underserved communities.  Planet lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, therefore, denies same.

12.    GAC provided services installing fiber optic lines and invoiced Defendant for the work beginning in 2022.

**ANSWER:**    Planet admits that GAC provided services installing fiber optic lines and invoiced Defendant for the work beginning in 2022.

13.    Those services involved plowing through land and laying cable, mostly adjacent to existing roads.

**ANSWER:**    Planet admits that GAC's services "involved plowing through land and laying cable."  Planet denies the remaining allegations in this paragraph, and specifically denies that plowing through land and laying cable were the only services performed by GAC.

14.    Work accelerated and increased under Planet's direction through the summer of 2024.

**ANSWER:**   Planet lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and, therefore, denies same.

15.    GAC often had multiple crews, consisting of six people each, working six days a week, particularly during the summer of 2024.

**ANSWER:**   Planet lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and, therefore, denies same.

16.    Most of the work was done in the Farmville area, and Planet's managers and employees regularly visited worksites, reviewed the work being performed, and even supervised work and instructed work crews.

**ANSWER:**   Planet admits that GAC performed work in the Farmville area, and that Planet's managers and employees visited the worksites.  Planet denies the remaining allegations in this paragraph.

17.    Planet and in particular Mr. Garrett were cost-conscious, for example instructing GAC to plow through land on the sides of a road within a right of way, rather than bore under sidewalks and driveways at much greater expense.

**ANSWER:**   Planet lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and, therefore, denies same.

18.    Invoices were sent weekly.

**ANSWER:**   Planet denies the allegations in this paragraph.

19.    The invoices were all due on a "net 30" basis, requiring payment thirty days from issuance of the invoice.

**ANSWER:**   Planet admits that the invoices were due on a "net 30" basis.

20.    Work was performed, and payments were made, in the ordinary course of business. However, as a practical matter, payments were often made late.

**ANSWER:**    Planet admits that work was performed, and payments were made, in the ordinary course of business, and that payments were sometimes made over thirty days following Planet's receipt of an invoice.

21.    GAC in its regular course of dealing understood that Planet wanted to wait for its payments from the Commonwealth of Virginia if possible, before paying GAC, for Planet's own cash flow purposes.

**ANSWER:**    Planet admits that it "wanted to wait for its payments from the Commonwealth of Virginia if possible, before paying GAC, for Planet's own cash flow purposes." Planet lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, therefore, denies same.

22.    GAC was willing to accommodate these cash flow concerns.

**ANSWER:**    Planet lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and, therefore, denies same.

23.    Payment terms were based on the footage of the installation and the type of "handhole" or structure that was installed.

**ANSWER:**    Planet admits that payment terms were based on factors like the footage of the installation and the type of "handhole" or structure that was installed. Planet denies that these were the only factors relevant to payment terms.

24.    Planet paid all invoices until March 15, 2024, when Invoice #4668 dated February 14, 2024 was due.

**ANSWER:**    Planet admits that it paid all invoices until at least March 15, 2024, including Invoice #4668 dated February 14, 2024.

25.    Although invoices were not being paid on a Net 30 basis during much of 2024, Planet's employees assured GAC that payment was forthcoming.

**ANSWER:**    Planet admits that "invoices were not being paid on a Net 30 basis during much of 2024."  Planet lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, therefore, denies same.

26.    In the fall of 2024, management and apparently ownership of Planet changed.

**ANSWER:**    Planet admits that management and ownership of Planet changed in the fall of 2024.

27.    GAC slowed work and made requests for payment.

**ANSWER:**    Planet admits that GAC slowed work and made requests for payment in the fall of 2024.

28.    Planet's representatives regularly visited work sites, reviewed progress, and provided instructions, but never complained about the quality of work performed by GAC.

**ANSWER:**    Planet admits that its representatives "visited work sites, reviewed progress, and provided instructions."  Planet denies the remaining allegations in this paragraph.

29.    Based on information and belief, Mr. Garrett sold Planet in or around November 2024.

**ANSWER:**    Planet admits that Mr. Garrett, as well as other individuals with an ownership stake, sold Planet in November 2024.

30.    GAC was notified of the sale by phone.

**ANSWER:**    Planet lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and, therefore, denies same.

31.    Pursuant to the change in ownership, Planet changed its name from "Kinex Telecom, Inc." to its current name of Planet Fiber VA Inc.

**ANSWER:**    Planet admits that, pursuant to the change in ownership, Planet changed its name from "Kinex Telecom, Inc." to its current name of Planet Fiber VA Inc.

32.    Despite accepting GAC's services, Planet, particularly around the time of the acquisition and after, stopped responding to GAC's written invoices and e-mails regarding payment for the period between March 2024 and February 2025.

**ANSWER:**    Planet denies the allegations in this paragraph.

33.    There were still conversations regarding payments that were due.

**ANSWER:**    Planet admits to having conversations with GAC regarding payments that were due following the change in ownership.

34.    Planet's continued failure to pay began to cause GAC financial concerns.

**ANSWER:**    Planet lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and, therefore, denies same.

35.    The formerly friendly relationship with Mr. Garrett no longer applied, as Mr. Garrett was no longer the owner.

**ANSWER:**    Planet admits that Mr. Garrett no longer held a controlling ownership stake in the company starting in November 2024.  Planet lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, therefore, denies same.

36.    GAC's owner and management sought a meeting with Planet, and went to visit Alex Parker, the new representative for the owner of Planet, in Florida on February 24, 2025.

**ANSWER:**    Planet admits that Alex Parker, a representative for the company, met with GAC in Florida on February 24, 2025.

37.    Again, Mr. Parker provide reassurances that payment would be forthcoming as soon as the government paid Planet, which had apparently occurred to some extent with respect to some of the unpaid invoices.

**ANSWER:**    Planet denies the allegation in this paragraph.

38.    Defendant Planet did not raise any issues with the quality of GAC's services at the meeting in Florida.

**ANSWER:**    Planet denies the allegation in this paragraph.

39.    Despite this meeting, no payments came.

**ANSWER:**    Planet admits that it has not remitted any payments to GAC since February 24, 2025.

40.    On March 14, 2025, in response to an inquiry and demand for payment the day before from counsel, Planet for the first time, through counsel, sent a list of alleged deficiencies, such as disruptions to emergency services, non-compliance with safety protocols, damage to driveways, and unfinished work, among other items.

**ANSWER:**    Planet admits that, on March 14, 2025, through counsel, it sent a list of alleged deficiencies, such as disruptions to emergency services, non-compliance with safety protocols, damage to driveways, and unfinished work, among other items.  Planet denies the remaining allegations in this paragraph.

41.    GAC had never fielded any such complaints regarding the matters raised until receipt of this letter.

**ANSWER:**    Planet denies the allegations in this paragraph.

42.    Planet failed to pay invoices from March 15, 2024 until today, despite requesting and accepting GAC's services and work.

**ANSWER:**    Planet denies the allegations in this paragraph.

43.    Those unpaid invoices total $1,944,479.10.

**ANSWER:**    Planet admits that the invoices GAC claims have not been paid total approximately $1,944,479.10.  Planet denies that the invoices reflect the value of the work GAC performed.

44.    Planet still has not made specific allegations regarding specific complaints related to GAC's services pursuant to the unpaid invoices, but its lawyer simply listed various areas of concern on March 14 and indicated an audit was ongoing.

**ANSWER:**    Planet denies the allegations in this paragraph.

## COUNT I:  BREACH OF CONTRACT

45.    Plaintiff GAC re-alleges and incorporates by reference all other paragraphs of this Complaint.

**ANSWER:**    Planet incorporates the preceding paragraphs of its Answer by reference.

46.    GAC and Planet formed an agreement for GAC to undertake the work detailed in the unpaid invoices in exchange for consideration totaling $1,944,479.10.

**ANSWER:**    This paragraph states a legal argument or conclusion for which no answer is required.  To the extent a response is required, denied.

47.    GAC and Planet developed a course of dealing where Planet would visit work sites and supervise and authorize services, and GAC would bill monthly.

**ANSWER:**    This paragraph states a legal argument or conclusion for which no answer is required.  To the extent a response is required, denied.

48.    Planet breached the agreement by failing to pay GAC for the services performed.

**ANSWER:**    This paragraph states a legal argument or conclusion for which no answer is required.  To the extent a response is required, denied.

49.    GAC has been damaged in that it performed services worth $1,944,479.10 for no pay.

**ANSWER:**    This paragraph states a legal argument or conclusion for which no answer is required.  To the extent a response is required, denied.

WHEREFORE, based on the foregoing, Plaintiff GAC Enterprises LLC requests that this Court enter judgment against Defendant Planet Fiber, Inc. in the amount of one million, nine hundred forty-four thousand, four hundred seventy-nine dollars and ten cents ($1,944,479.10) in compensatory damages, plus interest, costs, and such other and further relief as justice requires.

**ANSWER:**    Planet denies that GAC is entitled to relief of any type.

## COUNT 2:  QUANTUM MERUIT

50.    Plaintiff GAC re-alleges and incorporates by reference all other paragraphs of this Complaint.

**ANSWER:**    Planet incorporates the preceding paragraphs of its Answer by reference.

51.    This quantum meruit claim is alleged in the alternative in case the Court holds that there is no enforceable contract.

**ANSWER:**    Planet admits that the quantum meruit claim is alleged in the alternative.

52.    GAC performed work and provided services at the request of Defendant Planet.

**ANSWER:**    This paragraph states a legal argument or conclusion for which no answer is required.  To the extent a response is required, Planet admits that GAC performed work and

provided services related to Planet's installation of fiber optic lines in and around Farmville, VA. Planet otherwise denies the allegations in this paragraph.

53.    GAC had multiple work crews working for Planet during much of the spring and summer of 2024 in particular.  GAC billed in accordance with its normal practices.

**ANSWER:**    Planet lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and, therefore, denies same.

54.    The value of GAC's services was $1,944,479.10.

**ANSWER:**    This paragraph states a legal argument or conclusion for which no answer is required.  To the extent a response is required, denied.

55.    Planet accepted GAC's services without compensating GAC.

**ANSWER:**    This paragraph states a legal argument or conclusion for which no answer is required.  To the extent a response is required, denied.

56.    GAC has been damaged in that it provided services worth $1,944,479.10 for no pay.

**ANSWER:**    This paragraph states a legal argument or conclusion for which no answer is required.  To the extent a response is required, denied.

WHEREFORE, based on the foregoing, Plaintiff GAC Enterprises LLC requests that this Court enter judgment against Defendant Planet Fiber, Inc. in the amount of one million, nine hundred forty-four thousand, four hundred seventy-nine dollars and ten cents ($1,944,479.10) in compensatory damages, plus interest, costs, and such other and further relief as justice requires.

**ANSWER:**    Planet denies that GAC is entitled to relief of any type.

## COUNT 3:  UNJUST ENRICHMENT

57.    Plaintiff GAC re-alleges and incorporates by reference all other paragraphs of this Complaint.

**ANSWER:**    Planet incorporates the preceding paragraphs of its Answer by reference.

58.    This unjust enrichment claim is alleged in the alternative in case the Court holds that there is no enforceable contract.

**ANSWER:**    Planet admits that the unjust enrichment claim is alleged in the alternative.

59.    Defendant Planet was conferred the value of GAC's services in cable installation.

**ANSWER:**    This paragraph states a legal argument or conclusion for which no answer is required.  To the extent a response is required, denied.

60.    Defendant Planet knew that GAC conferred such services, knew that GAC expected payment and knew that it should have paid GAC based on the unpaid invoices for services provided.

**ANSWER:**    This paragraph states a legal argument or conclusion for which no answer is required.  To the extent a response is required, denied.

61.    The benefit of GAC's services was $1,944,479.10.

**ANSWER:**    This paragraph states a legal argument or conclusion for which no answer is required.  To the extent a response is required, denied.

62.    Planet accepted GAC's services without compensating GAC.

**ANSWER:**    This paragraph states a legal argument or conclusion for which no answer is required. To the extent a response is required, denied.

63.    GAC has been damaged in that it provided services worth $1,944,479.10 for no pay.

**ANSWER:**    This paragraph states a legal argument or conclusion for which no answer is required.  To the extent a response is required, denied.

WHEREFORE, based on the foregoing, Plaintiff GAC Enterprises LLC requests that this Court enter judgment against Defendant Planet Fiber, Inc. in the amount of one million, nine hundred forty-four thousand, four hundred seventy-nine dollars and ten cents ($1,944,479.10) in compensatory damages, plus interest, costs, and such other and further relief as justice requires.

**ANSWER:**    Planet denies that GAC is entitled to relief of any type.

### AFFIRMATIVE AND ADDITIONAL DEFENSES

Pursuant to Federal Rule of Civil Procedure 8(c), and without assuming any burdens of proof or persuasion that would otherwise rest on Plaintiff, Planet asserts the following additional or affirmative defenses. Planet reserves all rights to assert additional or amended defenses.

1.    The Complaint, or portions thereof, fails to state facts sufficient to constitute a cause upon which relief may be granted.

2.    Damages, if any, incurred by GAC were the result of actions or inactions of third parties, including GAC, over whom Planet has no control.

3.    GAC is barred by the doctrines of estoppel and waiver from recovery against Planet to the extent GAC failed to mitigate any purported damages allegedly suffered, which Planet continues to deny.

4.    GAC's claims are barred, in whole or in part, to the extent that GAC committed a prior material breach of the agreement.

5.    The doctrine of set-off or recoupment applies to offset any purported damages allegedly suffered by GAC, which Planet continues to deny, against damages suffered by Planet as a result of GAC's breach of the agreement.

6.    GAC's claims are barred, in whole or in part, because the agreement between the parties lacked sufficient definiteness as to the nature and extent of the services to be performed.

7.      GAC's claims are barred, in whole or in part, to the extent the claims are barred by GAC's fraud or misrepresentation.

8.      GAC's claims are barred, in whole or in part, to the extent the claims are barred by the doctrine of unclean hands.

9.      GAC's claims are barred, in whole or in part, to the extent the claims are barred by the statute of frauds.

10.     GAC's claims are barred, in whole or in part, to the extent the agreement between the parties lacked consideration and a meeting of the minds.

11.     GAC's claims are barred, in whole or in part, to the extent the claims are barred by applicable statutes of limitations.

## <u>COUNTERCLAIM</u>

Pursuant to Federal Rule of Civil Procedure 13(a), Planet, by and through its undersigned counsel, files this counterclaim against GAC alleging the following:

1.      Planet is an internet service company that provides internet, Information Technology, and software hosting services to customers.

2.      In addition to providing internet and technology services to customers on a continuing basis, Planet installs and maintains the fiber optic networks supporting its services.

3.      Planet relies on grants from the Commonwealth of Virginia through the Virginia Telecommunication Initiative and the Rural Digital Opportunity Fund to provide internet coverage to rural and underserved communities in Virginia.

4.      Planet was previously known as Kinex Telecom, Inc., and changed names after a change in ownership in November 2024.

5.    Since 2022, Planet has been installing fiber optic network infrastructure to support its internet service business in and around Farmville, Virginia.

6.    Since 2022, GAC has performed work for Planet in connection with Planet's installation of fiber optic network infrastructure in and around Farmville, Virginia.

7.    GAC agreed to install fiber optic network infrastructure and complete the tasks assigned by Planet, and it was understood by the parties that GAC would complete the work it was assigned.

8.    GAC agreed to complete the installation work assigned by Planet in accordance with industry standards for installing fiber optic lines, and it was understood by the parties that GAC would complete the work it was assigned in a workmanlike manner.

9.    GAC agreed to complete the installation work assigned by Planet in accordance with industry safety standards and traffic regulations, and it was understood by the parties that GAC would complete the work it was assigned in a safe manner.

10.    GAC agreed to complete the installation work assigned by Planet in a manner that served Planet's broader fiber optic network, and it was understood by the parties that GAC would complete the work it was assigned in order to facilitate a functioning internet service network.

11.    Dating back to 2022, Planet has encountered significant issues with the quality, completeness, and professionalism of work performed by GAC.

12.    GAC has repeatedly performed defective work for Planet, including numerous instances of improper cable placement, kinked and bent ductwork, improper splicing, and damaged cables.  GAC's defective work has delayed the activation of customer accounts, degraded signal integrity, and required replacement work.

13.     Several critical tasks that GAC claims it has completed remain unfinished or incomplete.  These include several tasks that GAC claims payment for in invoices.  GAC's failure to complete assigned work has delayed Planet's network rollout and the activation of customer accounts.

14.     GAC has repeatedly performed work for Planet in unauthorized locations or without required approvals.  GAC's errors have required costly corrections, new permits, and additional construction efforts.  GAC performed unauthorized work along Route 460 leading to additional permitting expenses of approximately $60,000.

15.     GAC has repeatedly abandoned construction materials and created safety hazards.  GAC crews have left behind excess materials, debris, and equipment at various job sites.   In addition, GAC has repeatedly failed to comply with safety regulations and the Virginia Department of Transportation ("VDOT") traffic safety protocols, including inadequate signage along roadways and improper placement of equipment.  GAC's actions reflect poorly on Planet, and have impacted the public's perception of Planet.

16.     GAC has repeatedly damaged property while performing tasks for Planet.  Multiple reports document GAC's damage to driveways, sidewalks, landscaping, and other aspects of private property, which have resulted in complaints against Planet.  Construction-related damage caused by GAC has led to intervention by VDOT, resulting in project shutdowns and delays.  Planet has also documented multiple instances of GAC damaging or mishandling fiber optic strands, requiring extensive correction and repair.

17.     In one instance, a GAC subcontractor struck an underground utility line in an unmarked area, disrupting emergency services and creating a public safety risk.

18.     GAC's defective, incomplete, and unauthorized work has required substantial replacement and repair costs.

19.     GAC's defective work has forced Planet to redirect engineering and field crews away from other productive activities to fix problems with GAC's work.

20.     GAC's defective work has forced Planet to delay its service rollout to customers, resulting in lost revenue.

21.      GAC's defective work has forced Planet to devote resources to an extensive audit of GAC's work.

22.     GAC's defective work has occasioned public backlash and has forced Planet to devote time and resources to efforts to rehabilitate its reputation in the Farmville, Virginia area.

23.     GAC's defective work has jeopardized Planet's standing with the Virginia Telecommunication Initiative and the Rural Digital Opportunity Fund.

<u>COUNT I</u>
**(Breach of Contract)**

24.     Planet realleges and incorporates herein by reference each and every allegation set forth above.

25.     In response to GAC's Complaint, Planet has raised affirmative defenses challenging the formation and existence of any contractual relationship between GAC and Planet. Planet pleads this Count in the alternative to those defenses.

26.     Planet and GAC formed an agreement for GAC to install fiber optic equipment for Planet in exchange for consideration.

27.     The agreement and the course of dealing between Planet and GAC required GAC to complete the installation work agreed to by the parties.

28.     The agreement and the course of dealing between Planet and GAC required GAC to complete the installation work in accordance with industry standards for installing fiber optic lines and in a workmanlike manner.

29.     The agreement and the course of dealing between Planet and GAC required GAC to complete the installation work in accordance with industry safety standards and traffic regulations.

30.     The agreement and the course of dealing between Planet and GAC required GAC to complete installation work to serve a functioning internet service network.

31.     GAC breached the agreement by failing to complete tasks it promised to complete, performing installation work below industry standards and in an unworkmanlike manner, creating safety hazards at worksites, incurring VDOT sanctions, failing to follow VDOT safety protocols, damaging components of the fiber optic network, causing network failures, damaging third-party property, damaging private property, damaging culverts, and damaging roadways.

32.     As a result of GAC's failure to perform its obligations under the agreement with Planet, Planet has been damaged by incomplete work, work that must be redone, project delays, lost revenue, and funding complications.

33.     As a result of GAC's failure to perform its obligations under the agreement with Planet, Planet has incurred damages, to be proven at trial, in excess of $6,635,000.00.

## PRAYER FOR RELIEF

WHEREFORE, Planet respectfully prays for the following relief:

1.     That judgment be entered in favor of Planet;

2.     That GAC take nothing by its Complaint;

3.     That Planet be awarded $6,635,000.00 in damages for GAC's breach of contract;

4.      That Planet be awarded its reasonable attorneys' fees and costs; and

5.      That Planet be awarded such other and further relief as is just and proper.


**DEFENDANT/COUNTER-PLAINTIFF PLANET DEMANDS TRIAL BY JURY**




May 15, 2025                              By:    */s/ George P. Sibley, III*
                                                 George P. Sibley, III
                                                 HUNTON ANDREWS KURTH LLP
                                                 Riverfront Plaza, East Tower
                                                 951 East Byrd Street
                                                 Richmond, VA 23219
                                                 Telephone: (804) 788-8262
                                                 Facsimile: (804) 788-8218
                                                 Email: gsibley@HuntonAK.com

                                                 *Counsel for Planet Fiber VA Inc.*

## **CERTIFICATE OF SERVICE**

I hereby certify that on May 15, 2025, the foregoing document was electronically filed with the Clerk of Court using CM/ECF.  I also certify that the foregoing is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

*/s/ George P. Sibley, III*
George P. Sibley, III